Exhibit 3

AMERICAN ARBITRATION ASSOCIATION

Commercial Arbitration Tribunal

APEX NEVADA SOLAR, LLC, Claimant,

-against-

CHANGZHOU TRINA SOLAR ENERGY CO., LTD., Respondent.

Case No.: 01-20-0015-1014

**FINAL AWARD**

I, THE UNDERSIGNED ARBITRATOR, having been designated by agreement of the above-named Parties, Claimant Apex Nevada Solar, LLC ("Apex"), represented by the law firm of Troutman Pepper Hamilton Sanders LLP, and Respondent Changzhou Trina Solar Energy Co., Ltd. ("Trina Solar" or "CTSE"), represented by the law firm of Skaggs Faucette LLP, and having been duly sworn, and having heard the allegations and proofs of the Parties, do hereby AWARD as follows.

**PROCEDURAL HISTORY**

Apex brought this arbitration on October 1, 2020, to enforce an expert determination clause contained in Trina Solar's Limited Warranty of photovoltaic solar modules which it manufactured and Apex purchased pursuant to a Module Sales Contract made on September 15, 2011, with Trina Solar's affiliate, Trina Solar U.S., Inc. ("Trina Solar U.S."). The initiated arbitration was originally filed against both Trina Solar U.S. and Trina Solar.

The Limited Warranty is part of the Module Sales Contract between Trina Solar U.S. and Apex, and so Apex filed its initial Demand for Arbitration pursuant to the arbitration clause contained in the Module Sales Contract. In a Special Response, dated and filed on October 19, 2020, Trina Solar alleged that it should be dismissed from this proceeding because it was not a party to the Module Sales Contract.

In a separate Response of the same date, Trina Solar U.S. alleged that it, too, should be dismissed because it was not a party to the Limited Warranty.

On November 16, 2020, Apex, Trina Solar and Trina Solar U.S., through counsel, provided the Tribunal with a letter agreement setting forth the "Agreement of the Parties regarding Jurisdiction." The letter agreement is co-signed by all counsel and states:

> The Parties have conferred on the issues raised in respondents' Responses to the Arbitration Demand and in particular whether there are any claims stated against Trina Solar U.S. and whether Changzhou Trina Solar Energy Co. Ltd (CTSE) agreed to arbitrate any disputes arising from the Limited Warranty provided by Trina Solar with respect to certain solar PV modules that Claimant Apex Nevada Solar LLC ("Apex") contends applies to the dispute described in Apex's Arbitration Demand. As a result of those discussions, the parties have agreed that:
>
> 1) Apex will dismiss Respondent Trina Solar U.S. from this Arbitration.
>
> 2) In exchange, Changzhou Trina Solar Energy Co. Ltd (CTSE) will consent to the jurisdiction of the arbitrator to determine the dispute between CTSE and Apex regarding the Limited Warranty. In particular, CTSE and Apex agree that (a) AAA Commercial Arbitration Rules apply; (b) the location of the arbitration will be New York, New York; (c) there will be a single arbitrator; (d) the arbitrator has the authority to grant the non-monetary relief sought in the Demand if Apex prevails on one or more of its claims; (e) the arbitrator shall have the authority to require the payment of costs of the arbitration (other than each Party's separate attorneys' fees and costs, which fees and costs shall be borne solely by such Party) including the fees of the arbitrator, by the Party who did not prevail, but unless and until such award is made, the Parties shall share equally in the costs of the arbitration; (f) the results of the arbitration shall be binding on the parties, and judgment on the award may be entered by a New York state or federal court; and (g) the language to be used during the Arbitration proceedings is English. Within ten (10) business days of your acknowledgement as to this agreement, Claimant Apex will file an amended demand against CTSE only. Within five (5) business days of the Apex's filing of the amended demand, CTSE will file an answering statement withdrawing its jurisdictional objection.

The Parties' agreement on jurisdiction is incorporated by reference in the Tribunal's Report of Preliminary Hearing and Scheduling Order No. 1, dated November 20, 2020 (the "Scheduling Order").

As provided in the Scheduling Order, Trina Solar confirmed its consent to the agreement in a letter to the Tribunal on November 24, 2020.

As further provided in the Scheduling Order, Apex filed its Revised Demand on December 1, 2020. The pleading states three claims against Trina Solar based upon its refusal to resolve by expert determination certain disputes related to its proposed repair of manufacturing defects and damage in the modules covered by its Limited Warranty. The first claim seeks a declaration that Trina Solar breached the Limited Warranty by refusing to engage in the expert determination process; the second seeks an order mandating that Trina Solar submit to the expert determination process; and the third seeks a declaration that the terms of the Limited Warranty mandate that the expert determination process be utilized to resolve the Parties' disputes.

On December 8, 2020, Trina Solar filed its Response to Apex's Revised Demand. By that pleading, Trina Solar withdrew its prior jurisdictional objection, denied the existence any dispute warranting expert determination, and alleged various affirmative defenses.

As further provided in the Scheduling Order, Apex filed a dispositive motion for judgment on its claims against Trina Solar on January 8, 2021. Trina Solar filed its opposition to the motion on January 26, 2021, and Apex filed its reply on February 2, 2021. The Tribunal heard oral argument on the motion on February 12, 2021, at which time Trina Solar withdrew part of an affirmative defense it had raised in opposing the motion, designated in Trina Solar's Response of December 8 2020, as its "First Affirmative Defense." In the period February 26-March 19, 2021, the Parties submitted legal briefs addressing the remaining part of that defense. On March 23, 2021, Trina Solar's counsel informed the Tribunal and opposing counsel that Trina Solar withdrew the defense in its entirety. By letter agreement dated March 24, 2021, the Parties stipulated to the withdrawal of the defense. The Tribunal so ordered the stipulation on March 31, 2021, and it is incorporated by reference herein.

This Award sets forth the Tribunal's ruling on Apex's dispositive motion.

## **SUMMARY OF SALIENT FACTS**

Based upon the Parties' pleadings and the affidavits and exhibits submitted by them in connection with the dispositive motion, the Tribunal finds and summarizes the facts as follows.

Apex, formerly known as "Fotowatia Nevada Solar, LLC," is a subsidiary of Southern Power Company ("SPC") and the owner of a solar photovoltaic electricity generating power plant located in Clark County, City of North Las Vegas, Nevada (the "Power Plant"). The Power Plant is a 20 megawatt solar facility located on a 154-acre site consisting of approximately 88,000 polycrystalline solar modules manufactured by Trina Solar.

Apex purchased the modules from Trina Solar U.S. pursuant to their Module Sales Contract, which was made on or about September 15, 2011. As provided in the Module Sales Contract, Trina Solar made or caused delivery of the modules to Apex in early 2012.

Trina Solar's Limited Warranty of the modules is designated "Annex 1" of several appendices to the Module Sales Contract. Module Sales Contract § 5.3 incorporates the Limited Warranty by reference, and the Contract states at page 19 that the appendices, which include the Limited Warranty, "constitute part of this Contract."

Module Sales Contract § 10 states: "The laws of New York will govern the validity of this Agreement, the construction of its terms and the interpretation and enforcement of the rights and duties of the parties hereto." Module Sales Contract § 11, pursuant to which Apex filed this proceeding, provides that any dispute arising out or in connection with the Contract be resolved by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules.

Limited Warranty § 2(a) states in part: "Trina Solar warrants that for a period of ten years commencing on the Warranty Start Date (as defined below) the Product(s): will be free from defects in design, material, workmanship or manufacture that materially impede their functioning, [and] will conform to the specifications and the drawings applicable thereto." Limited Warranty § 2(b) states: "In addition, Trina Solar warrants that for a period of twenty-five years commencing on the Warranty Start Date loss of power output of the nominal power specified in the relevant Product Data Sheet and measured at Standard Test Conditions (STC) for the Product(s) shall not exceed … For Polycrystalline Products (as defined in Sec. 1a) 2.5% in the first year, thereafter 0.7% per year, ending with 80.7% in the 25th year after the Warranty Start Date …."

Limited Warranty § 5(a) states in part:

> As Buyer's sole and exclusive remedy under this Limited Warranty, Trina Solar will, in its sole discretion, either: (i) refund the then current market price of the relevant new Product(s); (ii) repair the defective Product(s) at no charge …; or (iii) replace the defective Product(s) or part thereof by a new or remanufactured equivalent at no charge…."

Limited Warranty § 5(c) states in part:

> All other claims under this Limited Warranty against Trina Solar shall be excluded. Under no circumstances will Trina Solar be responsible for any special, incidental or consequential damages (including loss of profits, harm to goodwill or business reputation, or delay damages) whether such damages are based in contract, warranty, negligence or strict tort. This exclusion applies even if the remedies set forth below [sic] herein are deemed to have failed of their essential purpose, to the extent permissible by law.

Limited Warranty § 8(b) provides for expert determination of claim-related disputes, stating as follows:

> Any dispute on technical facts relating to claims brought under this Limited Warranty for defects of Products shall be determined by expert determination. Trina Solar and Buyer will, at Trina Solar's request, appoint as independent expert and appraiser a reputable researcher from a first-class international test-institute such as Fraunhofer ISE in Freiburg/ Germany, TÜV Rheinland in Cologne/ Germany or ASU Arizona State University ("Technical Expert"). The determination by such Technical Expert shall be final, conclusive, binding and enforceable in any proceeding brought hereunder. The Technical Expert shall (i) act as an expert; (ii) allow the parties a reasonable opportunity to make representations and counter-representations; (iii) take those representations and counter-representations into account; and (iv) if required by either party give written reasons for his or her determination. The award of the expert shall be final, conclusive and binding on the parties, and the expert will be entitled to include in the award the costs of the reference to the expert and of the expert's determination (including the expert's own fees and expenses and the legal and other costs of the parties).

In and between late 2017 and early 2018, Apex and SPC personnel identified defects and damage in the modules, including solder joint failure and cracking in the back sheets used to provide the modules with electrical insulation and to protect them from mechanical stress and environmental corrosion. Other defects included inner layer cracking in back sheets, hot spots, corrosion, tabbing wire defects and other faults. The Parties agree that Apex submitted a claim for these defects pursuant to the Limited Warranty.

According to the affidavit of William Jason Chavies, a Site Manager at the Apex Plant, a company called First Solar was serving as the Plant's operations and maintenance provider and submitted the claim in late 2017. According to the affidavit of David Rowland, a Trina Solar Technical Service Manager, Apex submitted the claim through the Trina Solar Customer Service Portal on March 1, 2018, as evidenced by Customer Request R2018030100N3N of that date, with attachments entitled: "Apex back sheet cracking and safety issues: (excerpts from 'Apex_IR_Verification_Summary_9-14-2017' and additional notes), W. Hobbs, PE, SCS R&D, 11/2/2017." (Rowland Aff., Exh. A.)

Trina Solar acknowledged Apex's claim, admitted the existence of manufacturing defects in the modules, and formulated a process to repair the modules. In December 2018, Trina Solar representatives met with Apex's operations and maintenance team to present and review the process. The process is reflected in a 22-page document entitled "Trina Solar Back sheet repair process." (Chavies Aff., Exh. 1.) In that document, Trina Solar represented that the back sheet cracking can be repaired by pasting on new back sheets to prevent water vapor, ultraviolet light, and oxygen from reaching inner layers of the modules; that the module edges can be resealed; and "[t]o make sure this method works for customers, Trina have tested all the item according to IEC in Third part TUV, and according to the test result, the test result is ok." (*Id.* at 3-5, 9.) Trina Solar similarly represented: "Trina have recommended the remedy method to our customer in China and several projects have been finished in the second half year. When the project is finished, our customer have inspected and accept [sic] it, so far, the project works very well." (*Id.* at 12.)

Despite Trina Solar's assurances of the adequacy of its proposed repair, Apex was concerned that Trina Solar offered to improve the back sheets and edge seals only, that it offered no repair solutions for defective and damaged components within the modules, and that its proposal was deficient in several other respects. These are recited in Mr. Chavies' affidavit as follows:

- Even if edges were sealed and new back sheets were pasted on, internal damage would remain, as well as UV and moisture exposure that likely would cause worsening damage.
- It might be impossible for new back sheets to appropriately adhere to the older back sheets.

- Trina Solar had not provided evidence satisfying Apex that improving the edge seals of modules would stop worsening damage due to future ingression of moisture.
- It would be difficult to determine the appropriate repair for each module and to perform it in a high-quality manner across tens of thousands of units in desert conditions, and that transporting panels across the site to facilitate repairs could result in additional damage.
- Apex believed that pasting on new back sheets would make it difficult for Apex to monitor internal corrosion and damage going forward, and might compound heat damage.

In 2019, Trina Solar engaged a third-party, Verdant, to perform an inspection of approximately 87,000 of the modules installed at the Apex Plant. Trina Solar provided Apex with a summary rather than a full report of the inspection. The summary indicated that approximately 13,652 modules showed light busbar corrosion, 21,064 modules showed heavy corrosion, 34,974 modules showed cracking on the back sheet exactly along the ribbon, 10,644 showed cracking inside the modules near the frame, and 1,173 showed black spots. According to Mr. Chavies' affidavit, Apex representatives believed that the summary did not accurately reflect the results of the inspection and the extent of the actual damage in modules at the Plant. Apex representatives also doubted the reliability of the Verdant inspection, and Mr. Chavies' affidavit states there since have been instances of total panel failure on modules identified as having only light corrosion.

Thereafter, Trina Solar sought Apex's approval to proceed with Trina Solar's proposed repairs. The process has been delayed, however, because Apex and Trina Solar are unable to agree on several technical issues, including the testing criteria that would be used to determine the effectiveness of the proposed repair, such as flash testing, electroluminescence testing, insulation testing, peel strength testing, damp heat cycle testing, thermal cycle testing, back sheet durability sequence testing, and extended UV exposure testing; the classification of corrosion, and whether corrosion is likely to continue after the repair. In addition, Trina Solar has not complied with Apex's requests for the full results of the Verdant inspection and evidence that the repaired modules would not further corrode or deteriorate.

On January 13, 2020, Apex sought to resolve the Parties' disagreements by initiating the expert determination process provided in Limited Warranty § 8(b). In response, Trina Solar indicated that it would agree to the engagement of a solar technology expert, and Henry Heilsmair, Ph.D., submitted a proposal to provide technical expert services. On April 21, 2020, however, while Mr. Heilsmair's engagement was being negotiated, Trina Solar sent Apex an email in which Trina Solar refused to agree that the expert's determination would be binding and enforceable. As a result, Mr. Heilsmair withdrew his proposal.

On May 1, 2020, Apex, through counsel, requested that Trina Solar agree to submit the Parties' disputes to binding expert determination. On May 6, 2020, Trina Solar reiterated its refusal to participate in the expert determination process, a position it maintained throughout further communications between the Parties' counsel in the period May-September 2020. As a result, Apex initiated this arbitration on October 1, 2020, seeking declaratory and equitable relief to compel an expert determination of the Parties' disputes.

## SUMMARY OF THE PARTIES' CLAIMS AND CONTENTIONS

Apex contends that the Parties' disagreements with respect to the following matters are disputes on technical facts which Trina Solar is obligated to resolve in accordance with the expert determination process provided in Limited Warranty § 8(b): (1) whether Trina Solar's proposed repair addresses all existing damage to the modules at the Apex Plant; (2) whether the proposed repair will prevent further deterioration of the modules from exposure to environmental conditions that has already occurred; (3) what scientific criteria should be used to classify the damage to the modules as requiring either repair or replacement; and (4) what scientific criteria should be used to determine the adherence capability of the new back sheets and tolerance of the overall repair to environmental conditions. Apex contends that Limited Warranty § 5(a), though affording Trina Solar sole discretion to repair, replace or provide price refunds of defective solar modules, may not be construed as excusing Trina Solar's failure to resolve the Parties' disagreements by expert determination pursuant to Limited Warranty § 8(b). Apex argues that

such a construction would put it at the mercy of Trina Solar, force it to accept a partial repair of the defective modules, and cause the Limited Warranty to fail of its essential purpose. Apex claims that it is therefore entitled to an award compelling Trina Solar to submit the Parties' disputes to a technical expert for determination in accordance with Limited Warranty § 8(b).

Trina Solar asserts that "Apex's ability to seek a remedy is not in jeopardy — CTSE has agreed Apex has a valid warranty claim …." (Opp. Br. at 2.) Trina Solar nonetheless contends that the expert determination provision in Limited Warranty § 8(b) is inapplicable to the Parties' disagreements, and that any binding expert determination would be irrelevant to the Parties' warranty obligations. (*Id.* at 8-19.) In support of its position, Trina Solar contends that Apex has not identified a dispute on technical facts yet ripe for expert determination pursuant to § 8(b); that the Parties' disagreements are speculative and do not concern facts that actually exist; that § 8(b) cannot come into play in the absence of a dispute about whether there is a defect or whether a warranty remedy actually implemented by Trina Solar succeeds in fixing the problem; and that neither of those conditions exists because "there is no dispute that at least some of the solar panels at the Apex Plant are defective," and because Apex "has steadfastly refused to allow [Trina Solar] to proceed with the repair/replacement approach." (*Id.* at 4, 6.) Trina Solar also contends that "[p]ermitting Apex to utilize the Technical Facts/Expert Provision as a 'pre-approval' process for any repair or replacement would also impermissibly negate the express 'sole discretion' provision in the Limited Warranty because it would provide the buyer and/or the expert — not [Trina Solar] with the ability to control the remedial process." (*Id.* at 2-3.)

## ISSUE PRESENTED

Whether Trina Solar is obligated to resolve the Parties' disputes concerning its proposed repair by expert determination as provided in Limited Warranty § 8(b).

## DISCUSSION AND ANALYSIS

The issue presented in this case calls for construction of Limited Warranty § 8(b) with particular focus on the term "technical facts" as used in that provision. Expert determination as provided in § 8(b) is

generally recognized as a form of dispute resolution in which parties use a subject-matter expert, rather than a judge, mediator or arbitrator, to decide disputes. Having roots in the English common law of valuation and appraisement, the process is recognized under the laws of the United States and many other countries. Under the procedural law of the seat of this arbitration, agreements providing for expert determination of valuations, appraisals or other issues or controversies are specifically enforceable. *See* N.Y. Civ. Prac. Law & Rules § 7601.

Construction of Limited Warranty § 8(b) should be guided by the cardinal principle that contracts should be construed in a practical and commercially reasonable manner. *See ERC 16W Ltd. Partnership v. Xanadu Mezz Holdings LLC*, 95 A.D.3d 498 (1st Dep't 2012). Under this principle, construction of a contract that would give one party an unfair and unreasonable advantage over the other, or that would place one party at the mercy of the other, should — if at all possible — be avoided. *See Metropolitan Life Ins. Co. v. Noble Lowndes Intl.*, 84 N.Y.2d 430, 438 (1994); *see also Greenwich Capital Fin. Prods., Inc. v. Negrin*, 74 A.D.3d 413, 415 (1st Dep't 2010) ("a contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties" (internal quotation marks and citation omitted); *HGCD Retail Servs., LLC v. 44-45 Broadway Realty Co.*, 37 A.D.3d 43, 49-50 (1st Dep't 2006) (same); *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 135 (2d Cir. 1986) (contracts should be examined "in light of the business purposes sought to be achieved by the parties" (citation omitted)).

Limited Warranty § 8(b) provides for expert determination to resolve "[a]ny dispute on technical facts relating to claims brought under this Limited Warranty for defects of Products …." As used in this provision, and guided by the principle of commercial reasonableness, the term "technical facts" is properly construed to mean facts and circumstances that relate to warranty claims and are determinable by an expert in principles and methods of photovoltaic solar technology. This construction is informed by the Limited Warranty's remedial purpose, the nature of the equipment covered by the warranty, and the terms of the second sentence of § 8(b), which states that "Trina Solar and Buyer will … appoint as independent expert and appraiser a reputable researcher from a first-class international test-institute such

as Fraunhofer ISE in Freiburg/ Germany, TÜV Rheinland in Cologne/ Germany or ASU Arizona State University ('Technical Expert')." *Cf.*, N. Schultz, Technical Facts - Beyond Intractability, eds. G. Burgess and H. Burgess, Conflict Information Consortium, University of Colorado, Boulder (Posted: November 2003, http://www.beyondintractability.org/essay/technical-facts), defining the term as "a fact that requires some practical, trade, or scientific expertise in order to discover, verify, explain, and understand."[1]

So construed, the term "technical facts" encompasses the disagreements alleged by Apex because each pertains to the determinable adequacy of Trina Solar's proposed repair of defective solar modules at the Apex Plant according to principles and methods of photovoltaic solar technology. Opposing this conclusion, Trina Solar contends that Apex has not identified any dispute over technical *facts*, citing the Black's Law Dictionary definition of a "fact" as "something that actually exists." (Opp. Br. at 1, 8-10.) The same definition, however, states that *"[f]acts include not just tangible things, actual occurrences, and relationships, but also states of mind such as intentions and the holding of opinions."* Black's Law Dictionary (11th ed. 2019) (Emphasis added.) By this definition, the Parties' disagreements as to the adequacy of Trina Solar's proposed repairs concern technical facts even if *arguendo* something less than "facts" in the limited and unduly restrictive sense of the term urged by Trina Solar.

Moreover, while Trina Solar contends that the adequacy of its proposed repair is too speculative

---

[1] In explaining why "technical facts" matter in conflict situations, the cited source offers an example resembling a conflict over environmental remediation efforts at the Drake Chemical Superfund site in Lock Haven, Pa. The scenario is instructive in properly construing the term as it used in Limited Warranty § 8(b):

> Technical facts can play multiple roles in conflict situations. Disagreement over a technical fact can be the cause of a conflict. In other situations, a disputed technical fact can complicate an already costly conflict, adding to its intractability.
>
> For example, an environmental activist group protests the use of an incinerator to dispose of local contaminated soil that is currently polluting the underground water table. The activist group opposes the incinerator because of the pollution it will emit - incinerators have been proven to release highly toxic substances into the atmosphere in many previous cases. On the opposing side are the EPA and the Army Corps of Engineers, both saying that the type of contamination the soil contains is such that incineration is the least-polluting method of disposal available. Who is right? Understanding both the level of water pollution caused by the contaminants and the level of air pollution that will be caused by the incinerator, and being able to intelligently compare the health risks of each option, requires some technical expertise. Until these kinds of technical facts can be established and accepted, such a conflict is likely to linger and escalate.

to be considered a *fact* in the sense of something that actually exists, the argument is belied by its own "Back sheet repair process" (Chavies Aff., Exh. 1), which states — as matters of fact — that "pasting [on] a new back sheet ... *can prevent* [sic] *the AAA back sheet from Oxygen and ultraviolet*;" that "[t]he new back sheet *can prevent the water vapor and Oxygen* go [sic] through the old back sheet, and sealant on the front side *can prevent the Water vapor* get [sic] into the frame and solve the low insulation;" and that it had been possible to test its proposed repair methodology "[t]o make sure *this method works* for customers...." (*Id.* at 3, 5, 9, emphasis added.) The Tribunal therefore concludes that Trina Solar's definitional argument is without merit.

Trina Solar fares no better in contending that Limited Warranty § 8(b) does not come into play in the absence of a dispute about "whether there is a defect in the first place" or "whether a warranty remedy implemented by CTSE fixed the problem." (Opp. Br. at 9.) Section 8(b) does not expressly state those conditions, and it would be commercially unreasonable to imply them. Trina Solar's construction would permit it to circumvent any timely and meaningful expert determination of the Parties' disputes by simply admitting the existence of defects, as it has done here, and then providing — as Apex's sole and exclusive remedy — any repair which Trina Solar deems expedient, regardless of whether relevant technical factors indicate the repair is adequate or incomplete. This 'wait and see if it works' construction would render the Limited Warranty's expert determination provision meaningless because post-repair disputes between the Parties would not be necessarily limited to differences over technical facts, but would likely concern legal issues as well as factual disagreements with respect to Trina Solar's performance of its warranty obligations — issues of law and fact that the Parties would have to pursue by means of court actions or arbitration proceedings.

The unreasonableness of Trina Solar's construction of Limited Warranty § 8(b) is underscored by the terms of Limited Warranty § 5(c), which purportedly absolve Trina Solar of any liability to Apex for any special, incidental or consequential damages (including loss of profits, harm to goodwill or business reputation, or delay damages), even if the exclusive remedies provided in § 5(a) are deemed to fail of their essential purpose. In light of the terms of § 5(c), Trina Solar's construction of § 8(b) would put Apex at

Trina Solar's mercy and leave Apex without recourse for damages it might suffer by reason of Trina Solar's failure to provide adequate repairs — precisely the doomsday scenario which Apex has sought to avoid by its efforts to implement the expert determination process presently rather than after repairs have started.

For similar reasons, Trina Solar is wrong in contending that Apex's construction of Limited Warranty § 8(b) conflicts with the provision in Limited Warranty § 5(a). Without limiting Trina Solar's sole discretion to repair or replace defective modules under § 5(a), Apex's construction of § 8(b) enables the Parties to have a technical expert resolve their disputes on technical facts without the necessity of presently pursuing more costly and time-consuming forms of dispute resolution. Apex's construction facilitates the Parties' resolution of such disputes before and during the repair process, when repair methodologies may be adjusted and protracted litigation resulting from inadequate repairs can be avoided. Thus, while not infringing upon Trina Solar's remedial prerogatives under § 5(a), Apex's construction of § 8(b) fosters the use of expert determination in furtherance of the repair process.

In contrast, Trina Solar argues for a construction of Limited Warranty § 5(a) that would afford it absolute control over the warranty repair process and an unfettered right to provide *any* repair, regardless of its determinable adequacy and without obligation on Trina Solar's part to resolve disputes about the adequacy of the repairs until completed and shown to be ineffective. This construction ignores that §§ 2(a) and 2(b) explicitly extend to the future performance of Apex's solar modules, that Trina Solar has continuing remedial obligations under those provisions and § 5(a) (*see, e.g, Bulova Watch Co. v. Celotex Corp.*, 46 N.Y.2d 606 (1979)), and that the expert determination process provided in § 8(b) is integral to the remedial protection afforded to Apex under all of the foregoing provisions. Trina Solar's construction of § 5(a) is therefore commercially unreasonable and must be rejected.

The Tribunal therefore concludes that the Parties' disagreements concerning the adequacy of Trina Solar's proposed repair process are disputes on technical facts warranting determination by a technical expert as provided in Limited Warranty § 8(b). As alleged in Apex's motion and restated *supra*

at 8, the disputes are: (1) whether Trina Solar's proposed repair addresses all existing damage to the modules; (2) whether the proposed repair will prevent further deterioration of the modules from exposure to environmental conditions that has already occurred; (3) what scientific criteria should be used to classify the damage to the modules as requiring either repair or replacement; and (4) what scientific criteria should be used to determine the adherence capability of the new back sheets and tolerance of the overall repair to environmental conditions.

The Tribunal further concludes that Apex is entitled to a declaration that Trina Solar breached the Limited Warranty by refusing to comply with Apex's request for expert determination as provided in Limited Warranty § 8(b) to resolve the Parties' disputes. Because Trina Solar's obligation to participate in such expert determination is integral to its continuing obligation to remedy the defects and damage identified in the modules at the Apex Plant, Apex is entitled also to declaratory and injunctive relief compelling Trina Solar to submit forthwith to the expert determination process requested by Apex in order to resolve the Parties' pending disputes. In addition, the Tribunal concludes that Trina Solar should be required to pay the costs of the arbitration as provided in the Parties' agreement regarding jurisdiction dated November 16, 2020, numbered paragraph 2, quoted *supra* at 2.

## RELIEF GRANTED

The undersigned Arbitrator hereby AWARDS as follows:

1. IT IS ORDERED, ADJUDGED, AND DECREED that Claimant Apex Nevada Solar, LLC's ("Apex") dispositive motion filed January 8, 2021, in support of its First, Second and Third Claims for Relief herein against Respondent Changzhou Trina Solar Energy Co., Ltd. ("Trina Solar") is GRANTED in all respects.

2. IT IS ORDERED, ADJUDGED, AND DECREED that Apex's First Claim for Relief is GRANTED, and it is therefore DECLARED that Trina Solar breached its Limited Warranty by refusing to engage in the expert determination process provided in Limited Warranty § 8(b) and requested by Apex in order to resolve the Parties' disputes on technical facts as herein described.

3. IT IS ORDERED, ADJUDGED, AND DECREED that Apex's Second Claim for Relief is GRANTED, and it is hereby ORDERED that Trina Solar shall submit forthwith to the expert determination process provided in Limited Warranty § 8(b) and requested by Apex in order to resolve the Parties' disputes on technical facts as herein described, and that any findings with respects to such facts by the Technical Expert be shall final, conclusive and binding on the Parties.

4. IT IS ORDERED, ADJUDGED, AND DECREED that Apex's Third Claim for Relief is GRANTED, and it is therefore DECLARED that the terms of the Limited Warranty mandate that the expert determination process provided in Limited Warranty § 8(b) be utilized as requested by Apex to resolve the Parties' disputes on technical facts as herein described.

5. IT IS ORDERED, ADJUDGED, AND DECREED, pursuant to and in accordance with the agreement of the Parties regarding jurisdiction dated November 16, 2020, that Apex is the prevailing party in this arbitration, and that Trina Solar, as the non-prevailing party, shall pay forthwith all costs of the arbitration, including the fees of the arbitrator, incurred by Apex, other than Apex's separate attorneys' fees and costs.

6. IT IS ORDERED, ADJUDGED, AND DECREED, in accordance with decretal paragraph 5 hereof, that the administrative fees and expenses of the AAA-ICDR totaling US $6,625.00 and the compensation and expenses of the arbitrator totaling US $50,710.00 shall be borne by Trina Solar. Therefore, Trina Solar shall reimburse Apex the sum of US $31,980.00, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Apex, upon demonstration by Apex that these incurred costs have been paid.

7. This Award is in full settlement of all claims and counterclaims submitted to this Arbitration.

8. All claims and counterclaims not hereby expressly granted are denied in all respects.

Dated: April 21, 2021

Eli R. Mattioli, Arbitrator

Case No. 01-20-0015-1014

State of New York           )
                            ) SS:
County of Westchester       )

I, Eli R. Mattioli, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

_April 21, 2021_
Date

_____
Eli R. Mattioli, Arbitrator

State of New York           )
                            ) SS:
County of Westchester       )

On this 21 day of April 2021, before me personally came and appeared Eli R. Mattioli, to me known and known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

_____
Notary Public

MICHAEL M CAPUANO
Notary Public - State of New York
NO. 01CA6382730
Qualified in Westchester County
My Commission Expires Nov 5, 2022